NOT FOR PUBLICATION RECEIVED

UNITED STATES COURT OF APPEALS 2007    **FILED**

FOR THE NINTH CIRCUIT ANCHORAGE, ALASKA    NOV 09 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TRADING BAY ENERGY CORP., | No. 04-36001 |
| Plaintiff - Appellant, | D.C. No. CV-03-00157-A-RRB |
| v. | |
| UNION OIL COMPANY OF CALIFORNIA; MARATHON OIL COMPANY, | MEMORANDUM* |
| Defendants - Appellees. | |

| | |
|---|---|
| TRADING BAY ENERGY CORP., | No. 04-36086 |
| Plaintiff - Appellant, | D.C. No. CV-03-00157-RRB |
| v. | |
| UNION OIL COMPANY OF CALIFORNIA; MARATHON OIL COMPANY, | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Alaska

_____

\*    This disposition is not appropriate for publication and may not be
cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36-3.

Ralph R. Beistline, District Judge, Presiding

Argued and Submitted October 18, 2006
Seattle, Washington

Before: D.W. NELSON, THOMPSON, and PAEZ, Circuit Judges.

Trading Bay Energy Corporation ("Trading Bay") appeals the district

court's summary judgment ruling on breach of contract and various tort claims as

well as the grant of enhanced attorney's fees to Appellees, Marathon Oil Company

("Marathon) and Union Oil Company of California ("Unocal"). The district court

granted summary judgment in favor of Marathon and Unocal on the breach of

contract claim and dismissed the tort claims as lacking merit. The district court

also granted an enhanced attorney's fee award of 30 percent of actual costs under

Alaska Rule of Civil Procedure 82(b)(3). We have jurisdiction pursuant to 28

U.S.C. § 1291, and we affirm.

The district court in its summary judgment order determined that Paragraph

11 of the Letter Agreement, as modified, unambiguously limited Trading Bay's

right to participate in wells drilled on leases subject to the Letter Agreement. The

first sentence of Paragraph 11 of the Letter Agreement states: "Sellers [Trading

Bay] shall have the right to participate for up to a 10% working interest position in

any well drilled on the leases identified in Exhibit A."[1]  While the language of the

Letter Agreement may support an interpretation that limits Trading Bay's right to

participate to leases subject to the Letter Agreement, under Alaska law, the court

must look "both [to] the language of the [contract] and extrinsic evidence to

determine if the wording of the [contract] is ambiguous." *N. Pac. Processors, Inc.*

*v. City & Borough of Yakutat*, 113 P.3d 575, 579 (Alaska 2005) (quoting *Wessells*

*v. State Dep't of Highways*, 562 P.2d 1042, 1046 (Alaska 1977)).  The district

court erred by not addressing the extrinsic evidence offered by Trading Bay, which

included evidence of the prior conduct of the parties and testimonial evidence of

the intent of the original contracting parties, Russell Porter and Gary Carlson.  In

particular, the district court failed to consider the testimony of both Porter and

Carlson, which supported an interpretation of Paragraph 11 that provided Trading

Bay with a proportional right to participate in wells drilled anywhere in a unit into

---

[1] Subsequent language in Paragraph 11 of the Letter Agreement uses the term "lease or unit" in describing the seller's right to future participation in wells. Marathon argues that the first sentence of Paragraph 11 is a condition precedent to triggering rights related to the unit and that if a well is not drilled initially on the lease, then Trading Bay has no right to participate in wells drilled on the broader unit.  Trading Bay argues that the language in subsequent sections of the paragraph grants it a right to participate in wells drilled on the unit.  We need not reach this issue because the extrinsic evidence presented by Trading Bay demonstrates that the contract is ambiguous without the need to parse the language of Paragraph 11.

which leases subject to the Letter Agreement have been integrated. Therefore, contrary to the district court's ruling, the testimonial evidence supports Trading Bay's right to participate in the Abalone well since it was drilled on the Ninilchik Unit, which included a lease subject to the Letter Agreement. As a result, the extrinsic evidence demonstrates that Paragraph 11 of the Letter Agreement is ambiguous.

Because Paragraph 11 of the Letter Agreement is ambiguous, under Alaska law, we are required to "construe the language in accordance with the reasonable expectations of the parties." *Wessells*, 562 P.2d at 1048. Summary judgment is appropriate if the contract is not "reasonably subject to differing interpretations." *Kincaid v. Kingham*, 559 P.2d 1044, 1047 (Alaska 1977). We hold that an interpretation of Paragraph 11 that grants Trading Bay a right to participate in wells drilled anywhere in a unit, including leases not subject to the Letter Agreement, is not reasonable.

Assignment of leases must be approved by the state. Therefore, Trading Bay's assignment of the eight leases to Forcenergy should have complied with the state statutory and regulatory framework for unitization. Even construing Trading Bay's right to participate in wells drilled on the unit as an options contract as opposed to a working interest, Trading Bay's construction of Paragraph 11 would

Case 3:03-cv-00157-RRB    Document 85-3    Filed 04/12/2007    Page 5 of 6

grant it a right to the allocation of oil and gas production under leases not connected with those subject to the Letter Agreement. This right would contravene the Alaska oil and gas statutory and regulatory framework, which only grants rights to allocation of production to owners of participating area leases, which are leases that have confirmed oil and gas reserves lying beneath the land. Trading Bay's interpretation would establish it as a partial owner of all leases in the unit for purposes of allocation of production based on its ownership of one lease in the unit, which would render the regulatory framework for participating areas superfluous as applied to Trading Bay. It is highly unlikely that the State of Alaska would have approved the assignment based on the terms of the Letter Agreement as understood by Trading Bay.[2] Therefore, the summary judgment was appropriate.

In its motion for reconsideration, Trading Bay presented a new argument contending on the basis of two Alaska regulations, which protect the correlative rights of leaseholders within a 1500 foot radius of a wellbore, that the Abalone Well is "on" the lease subject to the Letter Agreement. The district court did not

---

[2] We do not decide whether, under the terms of the agreement, Trading Bay is entitled to participation rights if the covered lease(s) are within a participation area of a proposed well. At argument, Marathon seemed to acknowledge that if this were the situation then Trading Bay would be entitled to some participation rights.

5

abuse its discretion in denying the motion because under Federal Rule of Civil

Procedure 59(e), it is not appropriate for a party to raise a new argument on a

motion for reconsideration. *See 389 Orange Street Partners v. Arnold*, 179 F.3d

656, 665 (9th Cir. 1999). In addition, the district court did not abuse its discretion

under Federal Rule of Civil Procedure 60(b) because none of the potential grounds

for relief were alleged. *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir.

1991) (reconsideration under Rule 60(b) is appropriate "only upon a showing of

(1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3)

fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6)

'extraordinary circumstances' . . . .").

Finally, we conclude that the court did not abuse its discretion in granting

an enhanced attorney's fee award of thirty percent under Alaska Rule of Civil

Procedure 82(b)(3) because the reasons provided in the defendants' moving

papers, and incorporated by the court, are sufficient to support the enhanced

award.

**AFFIRMED**

6